CANADAY *v.* SOUTHERN LAND DEVELOPMENT COMPANY.

Opinion delivered January 24, 1921.

1. SPECIFIC PERFORMANCE—WAIVER.—In an action for specific performance of a contract whereby defendant agreed to furnish the necessary cash payment for land purchased by plaintiff, and to furnish money for improvement of the land, a second contract between the parties, though void for want of mutuality of obligation, was competent as evidence to prove that by it the parties had not waived the provisions of their original contract.

2. MORTGAGE—ABSOLUTE CONVEYANCE AS MORTGAGE.—Where plaintiff conveyed land to defendant upon consideration that defendant should make a cash advance and within eight months thereafter should furnish certain advances for mking improvements, and defendant made the cash advance but failed to make the advances for improvements, in a suit for specific performance of the contract, the court properly treated plaintiff's conveyance to defendant as a mortgage, and held that defendant forfeited his rights under the contract by failing to make the advances for improvements, and directed that defendant should have a lien on the land for the cash advance and interest, and that upon payment of the same the deed to defendant should be canceled.

Appeal from St. Francis Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

*J. W. Morrow* and *Cary & Vorder Breugge,* for appellant.

The evidence wholly fails to sustain the allegations of any violation of the contract by appellant. The case as made by plaintiff in the record is wholly without merit, and the findings and decree should be reversed. Appellee never tendered any money until September 3, 1918. To comply with the contract the money should have been provided and tendered on or prior to August 31 or at least on September 2. The tender was also insufficient and was not kept good. 90 Ark. 206. The evidence wholly fails to sustain the allegations of any violation of the contract, and the case as made by appellee is wholly without merit.

*Mann & Mann,* for appellee.

1. The provisions of the contract were by letter extended to September 1, 1918. The contract is supported by due consideration. No reason for declining to execute the deed was assigned in the letter. 68 Ark. 505; 93 *Id.* 497; 96 *Id.* 156; 97 *Id.* 623.

2. If appellee forfeited the right to purchase under the contract of April 3, 1918, it had the right under the original contract to pay the amount advanced by appellant and receive a reconveyance of the property.

The chancellor found that appellee complied with its contract of purchase, but found that appellant breached the original contract, and the findings are sustained by the evidence, and there is no error.

WOOD, J. The appellee instituted this action against the appellant for the specific performance of a contract, the material parts of which are substantially as follows: That the appellee had bargained for and was about to receive a deed to 338½ acres in St. Francis County, which were described in the contract, and that the parties decided to enter into an agreement by which they would be mutually interested in the handling, development and sale of the land. Thereupon, it was agreed

that the appellant should furnish the amount of the cash payment, aggregating $2,920.50; that, upon the delivery of the deed to the appellee, it should convey the title to the appellant by warranty deed, the appellant assuming all deferred payments. It was then provided that the appellant should furnish not less than $1,500 for the improvement of said land during the ensuing eight months, such moneys to be expended under the joint direction of the parties. It was next provided that the appellee should have the right to sell said tract as a whole at any time within eighteen months from the date of the contract, at a price of not less than $65 per acre. It was further provided that, if the sale was not made before the payment of the purchase money note falling due in 1918, then the appellee should meet said payment, and that a failure so to do should work a forfeiture of all rights of the appellee under said contract. It was provided in paragraph seven of the contract that if the appellee should fail to make a sale of the property within eighteen months, in accordance with the provisions of the agreement, all of its rights should be forfeited, except that the appellant should repay whatever sums the appellee had paid out in connection with the property.

The above contract was executed September 25, 1917. On April 3, 1918, the parties entered into a supplemental contract which provided, among other things: That if the appellee should on or before June 1, 1918, pay to the appellant the sum of $3,070.50, with certain interest, the appellant would convey said land to it and relinquish all his rights under the contract of September 25, 1917. It further provides that, in the event this should not be done, then the contract of September 25, 1917, should remain in full force and effect. On June 29, 1918, the appellant wrote appellee as follows:

"I hereby extend to the 1st of September, 1918, the privileges of a certain contract made with you for the sale of the land at Blackfish, in section 5-5-5, which privileges were to expire June 1, 1918."

The appellee set up in its complaint the contracts and alleged that appellant had failed and refused to comply with his contract of September 25, 1917, by not advancing the $1,500 for improvements; that, by reason of such failure, appellee was unable to make an advantageous sale of the lands. The appellee also alleged that it tendered to the appellant the purchase price of said land, as agreed upon in the so-called "supplemental contract," which was refused, and that the appellee had at all times stood ready to comply with said contract. The appellee prayed for specific performance, and, in the alternative, that the deed by which appellee acquired title be declared a mortgage, and for general relief.

The appellant, in his answer, admitted the execution of the contracts of September 25, 1917, and April 3, 1918, and admitted writing the letter of June 29, 1918, but denied having failed and refused to comply with the contract of September 25, 1917. He denied also other allegations of the complaint.

The president of the appellee testified that the appellant did not advance any money to make improvements; that he made demand upon appellant for such money. The appellee did some repair work, purchased some lumber, and presented the bill to Canaday, amounting to $23, and he refused to pay this bill. He distinctly stated again and again that he was not going to advance the improvement money. He never at any time approached any member of the appellee company for the purpose of joint direction of any repairs or improvements on the property. Up to the time that the contract of April 3, 1918, was entered into, the appellee had lived up to its contract in every particular. The secretary and treasurer of appellee company testified that the first thing after the contract of September 25, 1917, was entered into, there were some little repairs to be done on the houses amounting to twenty odd dollars, and there were two or three contracts practically made for clearing which were not carried out for the reason that Cana-

day said he did not have the money to spare at that time. He said that he would settle the obligation already incurred when he furnished the other money. Witness stated that "time after time we asked him to let us go ahead with the work and develop it. We wanted to get it developed according to the contract so as to get the benefit of more development on the land." Witness had a gang of negroes working at West Memphis and made arrangements for those men to go to clearing on the land in controversy, but didn't send them on the land for the reason that appellant asked witness to hold up on it. Witness said: "Several times we asked Mr. Canaday to let us go ahead with the work, and he declined to make advancements."

The appellee testified and categorically denied the above testimony. The court specifically found that the "defendant breached his contract with the plaintiff by failing to make the advances provided by the original contract." The court entered a decree authorizing the appellee to pay the appellant such sums with interest as the appellant had paid out on account of the land, and all advances made by appellant to the appellee. From that decree is this appeal.

It may be conceded that the contract of April 3, 1918, was unenforceable because there was no mutuality of obligation. It did not bind appellee to pay the money. Nevertheless, the contract was competent as evidence to prove that by it the parties had not waived the provisions of the contract of September 25, 1917. The letter of June 29, 1918, extending the contract of April 3, 1918, to the first of September, 1918, was without consideration. At the time this letter was written, the contract of April 3, 1918, by its own terms, was dead. Under its provisions the money could be paid by appellee on or before June 1, 1918, which was not done. But, the contract of April 3, 1918, also expressly provided that, if the appellee did not pay the appellant the sum of money mentioned therein to be paid under paragraphs one and

two of that contract, "the contract of September 25, 1917, shall remain in full force as though this agreement had not been made." Therefore, at the expiration of the contract of April 3, 1918, the contract of September 25, 1917, was in full force and effect. The court found that the appellant had breached this contract in not advancing the money for improvements according to its terms. This finding is supported by the decided preponderance of the evidence and is in accord with our own view of the facts. Such being the case, the appellant had forfeited his rights under this contract before the supplemental contract of April 3, 1918, was executed. This latter contract did not have the effect of waiving such forfeiture. Up to this time there had been no violation of the contract on the part of the appellee. When the contract of April 3, 1918, passed out, *ipso facto* according to its terms, the contract of September 25, 1917, was revived and was in full force and effect, the same as if the contract of April 3, 1918, had never been executed.

The appellant, having violated his contract to advance the money for improvements, and having thereby, as before stated, forfeited all his rights under the same, the court took the only view that could be taken of his rights and equities in treating the conveyance to appellant as a mortgage to secure him for all the advances that had been made by him to the appellee. In this way, the chancery court endeavored to place the parties as near as possible *in statu quo* and to work out the equities between them. The appellee, under the facts, in equity was the owner of the land in controversy, and the effect of the contract between it and the appellant, after the contract had been first violated by the appellant, was to render the appellee the debtor of the appellant for the sums which the latter had advanced the appellee. The court correctly declared that for these sums the appellant should have a lien on the lands in controversy, and that, upon the payment of the same, the deed from the

appellee to the appellant should be canceled; but, if the amount of the decree was not paid by the appellee, then the lands should be sold to satisfy the amount adjudged to be due the appellant by the decree. The decree is in all things correct, and it is therefore affirmed.